| | | |
|---|---|---|
| **KELLY LEWIS** | * | **NO. 2019-CA-0989** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **CHRIS CARBINE, INC. D/B/A** | * | |
| **CARBINE MOTOR CARS** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03329, DIVISION "C"
Honorable Sidney H. Cates, Judge
\* \* \* \* \* \*
**Judge Edwin A. Lombard**
\* \* \* \* \* \*
(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods)

*JENKINS, J., CONCURS IN THE RESULT*
*BARTHOLOMEW-WOODS, J., CONCURS*

Irl R. Silverstein
THE SILVERSTEIN LAW FIRM, APLC
2901 N. Causeway Blvd., Suite 307
Metairie, LA 70002

Of Counsel:

Pete Lewis
LEWIS & CAPLAN
3631 Canal Street
New Orleans, LA 70119

   COUNSEL FOR PLAINTIFF/APPELLANT

William J. Finn
Peter J. Segrist
CARVER DARDEN KORETZKY TESSIER FINN BLOSSMAN &
AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, LA 70163

   COUNSEL FOR DEFENDANT/APPELLEE

           **AFFIRMED**

          **MARCH 4, 2020**

The plaintiff/defendant-in-intervention, Kelly Lewis, appeals two district court judgments: (1) the judgment of June 14, 2019, granting the motion to quash depositions of Hancock Whitney Bank ("Whitney") employees and (2) the summary judgment rendered in favor of Whitney on July 18, 2019. After review of the record and arguments of the parties in light of the applicable law, we affirm the district court judgments.

*Relevant Facts and Procedural History*

This appeal concerns a dispute over funds in the district court registry between two creditors (Mr. Lewis and Whitney, the plaintiff-in-intervention) of the defendant, Chris Carbine, Inc. d/b/a Carbine Motor Cars ("Carbine"). In March 2014, Mr. Lewis, a salesman employed by Carbine, entered into a personal contract with Christopher R. Carbine, the principal owner and manager of Carbine, wherein Mr. Lewis agreed to obtain a personal credit line from Metairie Bank for the purchase of vehicles by Carbine to be resold to the public at the discretion of Carbine. By the terms of the contract, vehicles purchased and sold would be designated "KL" in accounting records and Mr. Lewis would receive 30% of the net profit. The contract was terminable by either party subject to a thirty-day

notice. Upon termination, the parties agreed that the proceeds from any remaining "KL" cars in Carbine's possession would be applied to Mr. Lewis's Metairie Bank credit line.

In March 2018, shortly before Carbine business operations ceased on April 2, 2018, Mr. Lewis issued the requisite 30-day Notice of Termination. On April 5, 2018, he filed this lawsuit for breach of contract and a writ of sequestration in Civil District Court for the Parish of New Orleans by Mr. Lewis. Mr. Lewis also sought reimbursement for two previously sold "KL" vehicles and transfer of title of the remaining "KL" vehicles in Carbine's possession.

The writ of sequestration was granted but on June 12, 2018, the district court issued a "Judgment Approving Consent Judgment" whereby the eight "KL" vehicles subject to the writ of sequestration would be returned to Carbine premises and sold. Further, the gross sales price proceeds were to be deposited into the registry of the court pending a determination of the appropriate distribution of the funds. Finally, service of the judgment upon Whitney was ordered and Whitney was directed to assert by intervention within fifteen days any claim to the deposited funds arising out of the concurrent litigation entitled "Whitney Bank v. Christopher Robert Carbine and Joseph D. Sando," Civil District Court docket No. 2018-1361, D-12.

On June 26, 2018, Whitney filed its petition for intervention and for recognition, enforcement, and maintenance of its security interest over the collateral property securing Carbine's debt to Whitney, as well as release of the funds in the court registry to Whitney. Mr. Lewis subsequently deposited a check in the amount of $245,141.88 (the proceeds from the sale of the Carbine vehicles) into the registry of the court.

2

After Mr. Lewis answered Whitney's petition for intervention, a period of discovery ensued. On February 21, 2019, Mr. Lewis issued more deposition subpoenas, including subpoenas for two retired Whitney employees, Freddie Elliot and Cathey Saurage. On March 18, 2019, Whitney filed its motion for summary judgment. Shortly thereafter, on April 10, 2019, Whitney filed a motion to quash the deposition subpoenas for its two employees.

On May 15, 2019, Mr. Lewis filed an affidavit and memorandum in opposition to Whitney's motion for summary judgment. On May 23, 2019, he filed an opposition to the motion to quash. After a motions hearing on May 31, 2019, the district issued an order on June 14, 2019, granting the motion to quash and on July 18, 2019, rendered summary judgment in favor of Whitney.

Mr. Lewis timely filed this devolutive appeal of the two judgments.

*Assignment of Error 1*

Mr. Kelly argues that Whitney failed to meet its burden of proof and, therefore, the district court erred in granting Whitney's motion for summary judgment.

*Standard of Review*

We review an appeal from summary judgment *de novo,* "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *SBN V FNBC v. Vista Louisiana,* 2018-1026, p. 5 (La. App. 4 Cir. 3/27/19), 267 So. 3d 655, 660 (citations omitted). The summary judgment procedure, designed to secure "just, speedy, and inexpensive" resolution of legal actions, "is favored and shall be construed to accomplish those ends." La. Code Civ. Proc. Art. 966 (A)(2). The

burden of proof rests with the mover on summary judgment but the "*burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law*." La. Code Civ. Proc. Art. 966(D)(1) (emphasis added).

*Applicable Law*

In 1990, Louisiana enacted Article 9 of the Uniform Commercial Code (UCC) as Chapter 9 of the Louisiana Commercial Laws to regulate the creation of conventional real security in most movables, thereby supplanting the previous law of pledge and chattel mortgage with a single device called a "security interest." *Tetra Applied Technologies, Inc. v. H.O.E., Inc.,* 2003-1523, p. 4 (La. App. 3 Cir. 5/26/04), 878 So.2d 708, 710-711 (citing Thomas A. Harrell, *A Guide to the Provisions of Chapter Nine of Louisiana's Commercial Code,* 50 LA. L. Rev. 711 (1990). As defined by La. Rev. Stat. 10:1-201(37) a "security interest" is "an interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation." To make a security interest fully effective against third persons a secured party must perfect their security interest by filing a UCC financing statement. *Id.,* 2003-1523, p. 6, 878 So.2d at 712. The filing of the financing statement is to warn the public that a security interest may exist and, giving priority to any security interest granted by the debtor to the secured party, allows the secured party to extend credit at will with some assurance. *Id.* Concomitantly, a creditor who does not take the steps the law declares are necessary to perfect his interests is denied the security benefits provided in Chapter 9. *Id.,* 2003-1523, p. 9, 878 So.2d at 714.

*Motion for Summary Judgment*

On motion for summary judgment, Whitney points out that it has priority to the funds based on its security interest and the lack of any security interest asserted by Mr. Lewis. In support of its motion, Whitney asserts the following undisputed facts: (1) Whitney is the holder and owner of a Promissory Note ("Note") executed in its favor: (2) that as security for the Note, Carbine granted Whitney a security interest in its inventory of automobiles and the proceeds generated from the sales of that inventory; (3) that Whitney perfected its security interest in accordance with the UCC and Louisiana Commercial Code; (4) that Mr. Lewis has not filed any financing statement to perfect any security interest; and (5) Carbine defaulted on its indebtness to Whitney in the amount of $936,771.45, thereby entitling Whitney was entitled to the funds in the registry of the court. More specifically, Whitney avers that it is the holder and owner of a Promissory Note ("Note"), as modified, dated September 26, 2015, executed by Carbine, as maker, in the original principal amount of one million dollars made payable to Whitney. In turn, the Note specifically states it is secured by collateral referenced in separate security documents executed between Carbine and Whitney. To wit, in June 2004, Carbine entered into the initial agreement for a revolving line of credit with Parish National Bank, subsequently acquired by Whitney Bank and, in turn, merged into Hancock Whitney Bank. Included in the initial agreement was the separate security agreement wherein Carbine agreed that its obligations were secured by all property in which it had an interest in, *was in possession of or had under its control including "all inventory, including, without limitation, all motor vehicles and all accessories . . . ."* (emphasis added). In addition, on June 22, 2006, Carbine executed an additional security agreement with Whitney, specifically granting

5

Whitney a security interest in "All Inventory," including as collateral "any and all" of Carbine's "present and future inventory . . . and all products and proceeds derived or to be derived therefrom . . ."

Whitney perfected its security interest in accordance with Chapter 9 of the Louisiana Commercial Laws by consistently filing the relevant financing statements, recorded in the uniform commercial code records of Jefferson parish as follows:

(1) a UCC-1 Financing Statement (July 12, 2004), File No. 26-282303;

(2) a UCC-3 Continuation Statement (April 23, 2009 (File No. 26-306993;

(3) a UCC-3 Amendment (February 7, 2014), File No. 26-282302;

(4) a UCC-3 Continuation Statement (February 10, 2014), File No. 26-337531; and

(5) a UCC Continuation Statement (January 17, 2019, File No. 26-379821.

On April 26, 2017, the Note matured and became fully due and payable. Carbine failed to pay its indebtedness due on the Note. Carbine's default on the Note triggered Whitney's interests under the security agreements in effect between the parties. Based on these undisputed facts, Whitney asserts that it is entitled to summary judgment and the funds in funds in the court registry because it has a first priority security interest.

In support of its motion, Whitney submits:

1. Exhibit A: The affidavit of Robert Stone, Assistant Vice President of Whitney, outlining the Carbine-Whitney agreements and attaching as exhibits: (a) the Note executed on September 26, 2015; (b) the security agreement executed on June 16, 2004; (c) t he Commercial Security Agreement executred on June 22, 2006; (d) the UCC-1 Financing

6

Statement filed in Jefferson Parish on July 12, 2004, File No. 26-282303; (e) the UCC-3 Continuation Statement filed on April 23, 2009, File No. 26-306993; (f) the UCC-3 Amendment filed on February 7, 2014, File No. 26-282302; (g) the CC-3 Continuation Statement filed on February 10, 2014, File No. 26-337531; and (h) the UCC Continuation Statement filed on January 17, 2019, File No. 26-379821.

2. Exhibit B: The Petition for Breach of Contract filed by Mr. Lewis acknowledging that he was aware that Carbine had existing financing agreements for its vehicles when he entered into the contract with Christopher Carbine to acquire vehicle for sale by Carbine   and attaching as exhibits (a) the contract between Christopher Carbine and Mr. Lewis specifically stating that the funds provided by Mr. Lewis "shall be used solely for the purchase of vehicles by Carbine Motor Cars to be sold to the public at the discretion of Carbine Motor Cars."; and (b) the letter from Mr. Lewis to Christopher Carbine terminating their agreement, dated March 22, 2018, and referencing the fact that the vehicles purchased with funds provided through Mr. Lewis were "titled to Carbine Motor Cars, Inc.";

3. Exhibit C: Mr. Lewis's responses to Whitney's requests for admissions, interrogatories and requests, including his admission that he "has not recorded a UCC-1 financing statement or other security interest in the inventory of Chris Carbine, Inc."

4. Exhibit D:   Affidavit of Christopher Carbine acknowledging that Whitney is the holder of the Note, as modified, dated September 26, 2015, in the original principal amount of one million dollars; that he

7

executed the initial 2004 Security Agreement and the 2006 Commercial Security Agreement granting Whitney security interests in all Carbine property and inventory; that the vehicles purchased with the funds provided by Mr. Lewis were in the Carbine inventory and titled in the name Chris Carbine, Inc. prior to being offered for sale; that at no time did Chris Carbine, Inc., grant a security in any Chris Carbine, Inc., property or inventory to Mr. Lewis; and that he did not authorize Mr. Lewis to file a UCC-1 financing statement encumbering the Carbine inventory and to his knowledge Mr. Lewis had not done so. Attached to Christopher Carbine's affidavit are all relevant documents referred to in the affidavit.

5. Exhibit E: A copy of the Motion for Approval of Consent Agreement between Carbine and Mr. Lewis, agreeing that 8 vehicles seized pursuant to the writ of sequestration would be returned to Carbine premises to be marketed to the public and that the proceeds from sales, along with funds from 2 previously sold vehicles seized pursuant to the writ of sequestration, would be deposited into registry of the court pending determination by the court as to the appropriate distribution.

6. Exhibit F: the judgment of June 12, 2018, approving the consent agreement and providing that the determination of the disposition of the funds deposited in the registry of the court "shall be tried summarily."

7. Exhibit G: A copy of Whitney's petition for intervention.

8. Exhibit H: A copy of Mr. Lewis's Answer to Petition for Intervention.

9. Exhibit I: A copy of Mr. Lewis's First Amended Answer to Petition for Intervention of Hancock Whitney Bank.

10. Exhibit J; A copy of Mr. Lewis' Motion to Deposit Funds into Registry of Court.

In response to Whitney's motion for summary judgment, Mr. Lewis filed an Affidavit in Opposition to Motion for Summary judgment, conceding that he "was generally aware that Carbine had existing financing agreements for its own vehicles" but arguing that the "funds deposited into the registry of the court do not represent proceeds generated from the sale of Carbine Motor Car vehicles" or from "the sale of any vehicles purchased with funds advance by Whitney Bank." In support of his affidavit, Mr. Lewis submits vehicle titles and checks written by him to Carbine pertaining to the vehicles purchased with his funds. Notably, the vehicle titles were assigned to Carbine as the purchaser/dealer/designee. None of the vehicles were transferred to Mr. Lewis or referenced in any manner his participation in the purchase or transfer of the vehicle.

By Memorandum in Opposition to Summary Judgment, Mr. Lewis admits he never obtained a security interest in the vehicles purchased with his funds and, concomitantly, he never filed a UCC-1 financing statement relevant to the vehicles. Nonetheless, he argues that because Whitney did not finance the 8 vehicles purchased with his funds and they "were never titled in the name of Carbine, they were not in the Carbine inventory." In support of this argument, he attaches the following exhibits:

1. Exhibit A: A copy of the Promissory Note and Disbursement Request and Authorization pertaining to his line of credit with Metairie Bank.

2. Exhibit B: The deposition testimony of Alex Katz agreeing that sales by consignment were "a normal activity at Carbine Motor Cars."

3. Exhibit C: An inventory list of Carbine's "Current Inventory" dated 11/30/2017 that does not list any of the vehicles purchased with his funds.

4. Exhibit D: The deposition statement of Christopher Carbine equivocally stating the document entitled "Current Inventory" dated November 13, 2017, was "[t]he entire inventory we had at the time, I think."

5. Exhibit E: The deposition testimony of Christopher Carbine agreeing that vehicles purchased with Mr. Lewis's funds did not appear on the inventory list although their titles were assigned to Carbine; he clarified, however, that "all of them did go through Carbine Motor Cars," and they were "assigned to Carbine Motor Cars as a dealer."

6. Exhibit F: The deposition testimony of Christopher Carbine stating "I don't know" when asked why, if the vehicles were "in Carbine Motor Cars' name to be sold through Carbine, they were not in the inventory list given to the bank.

7. Exhibit G: The deposition testimony of Christopher Carbine stating that "Carbine would buy the car and Kelly would write a check for that car, and once it was sold, Kelly would be paid back."

8. Exhibit H: A credit and deposit summary purportedly reflecting Carbine's Whitney balances as of January 24, 2017, and a copy of an Allonge dated February 20, 2017, extending the maturity date of the Note until April 26, 2017, with the provision that the obligor agreed to provide to the bank "true and correct financial statements," signed by Christopher Carbine.

9. Exhibit I: The deposition testimony of Christopher Carbine agreeing that Jenna Cooley had "at some point" also had a financing agreement with Carbine similar to Mr. Lewis.

10. Exhibit J: Transcript of deposition testimony wherein counsel for Mr. Lewis asks Christopher Carbine about efforts "undertaken to bring vehicles that were not part of the inventory to supplement" and counsel for Christopher Carbine objects.

11. Exhibit K: A copy of correspondence between counsel pertaining to depositions related to Motion to Quash.

12. Exhibit L: The deposition testimony of Alex Katz stating that a bank representative would periodically check the Carbine inventory and at these times there was an effort made to get all cars in the building for the check" which aroused his suspicions.

*Analysis*

The evidence submitted in support of Whitney's motion for summary judgment clearly shows that Whitney obtained a broad security interest, including all of Carbine's property and everything in its inventory *and possession* as collateral for its substantial loan to Carbine. It also shows that Whitney adhered to Louisiana law and policy in perfecting its security interest. In response, Mr. Lewis concedes that he had no security interest in the vehicles purchased with his funds, arguing only that vehicles did not fall within Whitney's security interest because Whitney did not provide the funding for them. This reasoning is frivolous. The evidence submitted by Mr. Lewis suggests that Christopher Carbine's dealings with Whitney may not have been in good faith, *i.e.,* the absence of the vehicles purchased with Mr. Lewis's funds from the inventory list supplied to Whitney, but

11

that does not provide a security interest in the vehicles to Mr. Lewis nor redound to his credit. Pursuant to the contract between Mr. Lewis and Christopher Carbine, the vehicles purchased with funds from Mr. Lewis were explicitly for Carbine and offered for sale to the public by Carbine on Carbine premises. Moreover, there is nothing in the public record to indicate Mr. Lewis had any ownership or security interest in the vehicles; to the contrary, they were assigned directly to Carbine. On the other hand, Mr. Lewis concedes he knew generally of Christopher Carbine's financial arrangements with Whitney. Moreover, the Whitney's UCC financing statements pertaining to those financial arrangements were in the public record. Accordingly, Mr. Lewis charges of unjust enrichment and bad faith against Whitney are ill-conceived.

Whitney is entitled to summary judgment as a matter of law. This assignment of error is without merit.

### Assignment of Error 2

Mr. Lewis argues that the district court erred in granting Whitney's motion to quash the deposition subpoenas served on its two retired employees.

*Applicable Law*

A trial court's ruling on a motion to quash is reviewed for abuse of discretion. *McMaster . Union Carbide Corp.,* 2019-0592, p. 2, ___ So.3d ___, 2019 WL 3243992 (citations omitted). Pursuant to La. Code Civ. Proc. art. 1422, a party may obtain discovery regarding any matter "which is *relevant* to the subject matter involved in the pending action . . . ." (emphasis added).

*Analysis*

This dispute is over the ranking of Carbine creditors. Whitney has a well-documented and broad security interest in Carbine property, possessions, and

inventory. Whitney perfected its security interest in accordance with Louisiana law. There is no competing creditor for the funds with a documented and perfected security interest. Thus, Whitney is entitled to the funds in the court registry as a matter of law and no affirmative defense or fallacious allegation of bad faith or unjust enrichment alters this fact. Accordingly, there is no testimony by Whitney's retired employees that could be relevant to this matter.

The district court did not abuse its discretion in granting the motion to quash. This assignment of error is without merit.

### *Conclusion*

We affirm the district court judgments.

**AFFIRMED.**